Tucker, Richard T., J.
By their amended civil complaint, Misael Patrocinio (Patrocinio) and Miriam Merlos (Merlos) (hereinafter referred to individually by name or collectively as plaintiffs) sued five separate persons and entities alleging various claims arising out of their purchase of residential premises located at 3 Hathaway Street, Worcester, Massachusetts.[1] Plaintiffs claim that Sherwood Mortgage Group, Inc. (Sherwood) violated the law by providing plaintiffs a loan when the loan-to-value ratio exceeded one hundred (100%) percent and the plaintiffs’ debt-to-income ratio exceeded reasonable standard underwriting ratios. In Count I, Fraud and Intentional Misrepresentation and Deceit, plaintiffs allege that Sherwood’s lending of amounts to plaintiffs in excess of the actual value of the property constituted fraudulent and deceitful conduct. In Count II plaintiffs allege that Sherwood’s action constituted unfair or deceptive acts or practices in violation of G.L.c. 93A, §§2 and 9. In Count III plaintiffs assert that Sherwood breached a contract with the plaintiffs. Lastly, in Count VIII plaintiffs seek damages for intentional infliction of emotional distress caused by Sherwood.[2]
Defendant denies these allegations and argues that as a mere lender in the transaction, it ran the same risks (ie. the loan amount) as the plaintiffs as borrowers. Defendant states that it neither misled nor injured plaintiffs and that any damages incurred were due to the plaintiffs’ own actions or the actions of other parties.
This matter was heard by the court without jury on December 10, 2010, December 16, 2010 and December 28, 2010. Seven witnesses testified and thirty documents were admitted into evidence. At the close of the trial the parties were granted additional time for submission of proposed findings, rulings and memo-randa of law.
On the evidence that I deem to be credible, I find, rule and enter an order for judgment as follows.
FINDINGS OF FACT
The court makes the following general findings of fact, reserving more detailed findings for the discussion of issues hereinafter.
(1) The plaintiffs, Misael E. Patrocinio and Miriam Merlos, are married and are originally from El Salvadore. Their native language is Spanish. Plaintiffs neither speak English fluently nor read or write English well.
(2) Plaintiffs purchased the subject property located at 3 Hathaway Street, Worcester, Massachusetts on September 25, 2003.
(3) In regard to this transaction, plaintiffs engaged the services of real estate broker Gina Llerena-Donohue who did business as Su Casa Real Estate (hereinafter “broker”).
(4) The purchase price paid by the plaintiffs for the real estate located at 3 Hathaway Street was $280,000.
(5) The subject premises consisted of a three-family residential building. Plaintiff Patrocinio visited seven properties before he decided upon 3 Hathaway Street. Patrocinio was familiar with this property since he had lived near it for eight years and it was located within the same school zone as that which his children were attending. Plaintiffs purchased the property with the intent to occupy one floor and rent the other two apartments.
(6) To pay for this property the plaintiffs secured a mortgage loan from Sherwood in the amount of $266,000.
(7) The seller of this property A.M.R. Realty, LLC (AMR) purchased this property on June 18, 2003 for $156,000.
(8) During the making of an offer to purchase, the signing of the purchase and sale agreement and the actual closing on the transfer of real estate on September 25, 2003, plaintiffs were not represented by legal counsel.
*212 (9) Prior to the real estate being transferred to the plaintiffs, the City of Worcester did not make an inside inspection although the property had been vacant for approximately fifteen years.
(10) Plaintiffs never themselves made a true inspection of the property although plaintiff Patrocinio visited the premises immediately before the closing. At that time it was dark, some lights in the building were not functioning and he was unable to determine much concerning its condition. He never engaged anyone else to conduct a pre-closing inspection although the transaction documents granted plaintiffs the right to do so.
(11) The defendant Sherwood was the lender in this transaction. Sherwood was a Massachusetts domestic corporation in the lending business during the relevant period. Sherwood was organized in the Commonwealth of Massachusetts on April 1, 1981. At all relevant times, Sherwood had a principal office located at 437 Columbus Avenue, Boston, Massachusetts 02116 and a local office at 1 Ararat Street, Worcester, Massachusetts.
(12) In making the mortgage loan of $266,000 to plaintiffs, Sherwood obtained and relied upon a real estate appraisal of the property made by Certified Real Estate Appraiser Michael Gill. In Mr. Gill’s written Uniform Residential Appraisal Report dated August 22, 2003 he noted that bathroom fixtures had not yet been installed, the interior painting had not been completed and that evidence of wood destroying insects necessitated a termite inspection. He valued the premises at $280,000 by the sales comparison approach and $288,000 by the income approach.
(13) The broker referred the plaintiffs to Sherwood to secure a mortgage loan.
(14) The broker, having previously prepared plaintiffs’ income tax returns since 2000, was acquainted with the plaintiffs at the time she was engaged in this transaction.
(15) The broker was bilingual and communicated with plaintiffs, primarily in Spanish.
(16) The plaintiffs only dealt with one representative from Sherwood that being the loan officer, Giovanny Zuniga (Zuniga). Plaintiffs met with Zuniga on three separate occasions in regard to the loan and the purchase of the subject property. Zuniga was bilingual and primarily communicated with the plaintiffs in Spanish. He was aware that plaintiffs did not speak English fluently or read English well.
(17) According to the Purchase and Sales Agreement executed on “_ day of July 2003"[3] by the parties, the plaintiffs agreed to purchase the real estate ”AS IS" and the Building, Structures, Improvements, Fixtures, located thereon “as is as found.” The Buyers (plaintiffs) acknowledged in the Purchase and Sale Agreement that they had not “relied upon any warranties or representations not set forth,” that “no warranties or representations concerning the premises have been made by the Seller.” Plaintiffs also acknowledged that they had the opportunity to have the premises inspected by a commercial firm or firms of their choice, and were relying solely upon the results of that inspection. Additionally the Agreement stated “New cabinets to be installed in First Floor pantry,” “Third floor bathroom to be completely remodeled,” and the “House and basement to be left in broom clean condition at closing.”
(18) Having taken possession of the property following the closing, plaintiffs discovered a number of serious deficiencies in the property, including water leaks, heating issues, electrical and wiring problems, as well as foundation problems.
(19) As a result of discovering these deficiencies, the plaintiffs tried to rescind the mortgage. They spoke to persons speaking for Sherwood and thereafter with Zuniga, but were not able to rescind the loan or the transaction. By this time Sherwood had assigned the mortgage to a third party. Plaintiffs also explored refinancing the property, but were unsuccessful.
(20) The plaintiffs have made the mortgage payments according to the terms of the mortgage since purchase. It has only been recently that the premises have been brought up to a condition sufficient to rent the two other apartments of the three-family building. The plaintiffs invested approximately $44,334.61 in order to bring the premises to a rentable condition.
(21) Prior to closing, representations were made to plaintiffs by the seller that repairs were being made to the properly. Although some work was performed pre-closing, further repairs were not made post-closing. Representations that repairs were to be completed were not made by Zuniga or any other agent of the defendant Sherwood.
(22) Plaintiffs signed the offer to purchase on July 7, 2003. This offer in the amount of $276,000 was accepted by Seller on that date. Plaintiffs never stepped inside the building until September 25, 2003. As stated, that viewing of the premises was limited.
(23) The defendant Sherwood was not involved in the transaction during the offer stage. On July 10, 2003 the plaintiffs signed a Mortgage Loan Origination Agreement with Sherwood and on August 18, 2003 Sherwood issued a Mortgage Loan Commitment to plaintiffs for a loan in the amount of $275,674. This commitment was subject to “a satisfactory properly appraisal to support value of $280,0000" and a termite inspection performed at least ten days prior to closing.
(24) On September 25, 2004, CraMar, Inc. Home Inspectors performed a home inspection for the plaintiffs at the premises. Water damage, defective insulation, fire damage, some rot and insect damage, poor windows, basement water penetration, mold, inadequate electrical and wiring system, old plumbing and foundation problems were noted. Also reported was *213 that some siding, roofing, lighting and some upstairs windows had been updated prior to closing.
DISCUSSION
In this “lender liability” action, plaintiffs claim harm as a result of the actions of Sherwood as set forth in four separate counts. The court addresses each count in turn.
1. Fraud, Intentional Misrepresentation and Deceit
To recover for fraudulent misrepresentation, a plaintiff “must allege and prove that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the misrepresentation as true and acted upon it to [his or her] damage.” Masingill v. EMC Corporation, 449 Mass. 532, 540 (2007) quoting Kilroy v. Barron, 326 Mass. 464, 465 (1950).
Here the evidence established that Sherwood was engaged as the lender after the plaintiffs’ written offer to purchase was accepted by the owner/seller A.M.R. Realty, LLC. Clearly any misrepresentations made to plaintiffs by other parties intending to induce plaintiffs to become legally bound to purchase the premises, cannot be attributed to Sherwood. Plaintiffs’ claim as set forth in the Amended Complaint against Sherwood, really comes down to allegations that Sherwood offered a loan to plaintiffs “when its loan-to-value ratio clearly exceeded one hundred percent (100%)” and where “the plaintiffs’ debt-to-income ratio would have exceeded reasonably standard underwriting ratios.” These actions on the part of Sherwood, as well as misrepresentations “to plaintiffs [of] information conducive to their purchase of the 3 Hathaway Street Property” are alleged to be material misrepresentations of fact which caused plaintiffs to suffer damages.
Before making the loan of $266,000 to plaintiffs, Sherwood received a written real estate appraisal that the property had a fair market value of $280,000 to $288,000. Plaintiffs offered no proof at trial of a different valuation. Also it is not clear Sherwood believed that the debt-to-income ratio was abnormal since the property was purchased to provide plaintiffs with their own residence and two sources of rental income. More importantly, however, is the fact that plaintiffs haven’t pointed to any specific misrepresentation made by Sherwood nor to any evidence that Sherwood knew of the falsily of such misrepresentation.
Plaintiffs contend that they did not understand fully the import of the standard loan documents (written in English) that they executed. But plaintiffs allege in their Amended Complaint, and I so find, that it was the defendant broker, representing the plaintiffs’ interests as well as serving as the seller’s spokesperson during the negotiations and closing, who “served as the constant interpreter for the Buyers translating all documents for them and securing financing for the purchase through co-defendant Sherwood Mortgage Group, Inc.”
In Massachusetts, the lender-borrower relationship is regarded as being at arms length. Thus no special duties are imposed on the lender, Shawmut Bank, N.A. v. Wayman, 34 Mass.App.Ct. 20, 24(1993), especially no general duty to provide advice or information to a borrower. Flaherty v. Bay Bank Merrimack Valley, N.A., 808 F.Sup. 55, 64 (D.Mass. 1992). That having been said, if a lender does provide materially inaccurate, incomplete or misleading information, liability may attach. Golber v. Bay Bank Valley Trust, 46 Mass.App.Ct. 256, 257-58 (1999); Danca v. Taunton Savings Bank, 385 Mass. 1, 9 (1982) (misrepresentation can be found in silence if a lender withholds information it has a duty to reveal).
Here the evidence failed to establish that Sherwood knew anything about the condition of the premises other that what was learned from the real estate appraisal of Michael Gill. The evidence is insufficient to prove Sherwood knowingly misrepresented any material fact to the plaintiffs.
2. Breach of Contract
Plaintiffs assert in their Amended Complaint that Sherwood owed them a contractual duiy of “good faith” and that Sherwood breached its obligation by approval of a loan which involved unreasonable loan-to-value and debt-to-income ratios.
The relationship between a lender and borrower is contractual and is generally, as is here, governed by detailed written loan agreements. These agreements are presumed to be entered into at arms length and a lender’s duties, absent facts of control and dominance over the borrower, do not rise to those of a fiduciary. Shawmut Bank, N.A. v. Wayman, 34 Mass.App.Ct. 20, 24 (1993) (duty of care to guarantor would exist if Bank participated or exercised control of debtor’s business); Industrial General Corp. v. Sequoia Pacific Systems Corp., 44 F.3d 40, 44 (1st Cir. 1995) (a plaintiff alone, by reposing trust and confidence in another, cannot transform a business relationship into one of a fiduciary nature). To be sure the duty of good faith implied in all contracts required Sherwood to be honest in its dealings and not purposefully injure plaintiffs’ rights to the contract. Again, however, as stated previously, the loan-value and debt-income ratios have not been proven to be unacceptable nor that Sherwood made the loan knowing of their substandard quality.
Upon the facts produced at trial, Sherwood has not been proven to have breached its loan contract with plaintiffs.
*214 3. G.L.c. 93A, §9 Claim
In their Count II, Violation of M.G.L. Chapter 93A and 940 CMR 8.00, plaintiffs do not plead that prior to bringing suit they provided defendants with written demand for relief at least thirty days prior to the date of filing as required by G.L.c. 93A, §9. In Count IX, Failure to Make a Reasonable Offer of Settlement, reference is made of a “demand letter received by [defendants] in compliance with [the] statute” having been sent. The written claim for relief required by Section 9 of Chapter 93A is a prerequisite to suit and must be pleaded and proven at trial. Kanamaru v. Holyoke Mutual Insurance Co., 72 Mass.App.Ct. 396, 407-08 (2008). Assuming that the reference to a demand letter in Count IX is a sufficient pleading for purposes of Count II, the proof of such a written claim for relief was not made at trial. The demand letter requirement under §9 is jurisdictional and failure to comply with its requirements necessitates dismissal of the suit. Lingis v. Waisbren, 75 Mass.App.Ct. 464, 469-71 (2009) (purported demand letter marked only for identification and not in evidence is not proof sufficient to meet statutoiy requirements); Spirios v. Cohen, 58 Mass.App.Ct. 338, 342-43 (1995) (summary judgment awarded against plaintiff who only represented by affidavit that a denial letter was sent without attaching a copy to the affidavit with proof of receipt); G.L.c. 93A, §9(3).
There being no proof of the service of a written claim for relief pursuant to §9, received at least thirty days prior to filing of the law suit, the count for relief under G.L.c. 93A, §9 as set forth in Count II is dismissed.
4. Intentional Infliction of Emotional Distress
The elements of the tort of intentional infliction of emotional distress are: (1) an intentional or reckless act, (2) amounting to' extreme and outrageous conduct, (3) causing severe distress to another, (4) by one not privileged to do so. Restatement (Second) of Torts, §46 and Comment i (1965). Where conduct is intentional or reckless and of an outrageous nature the long-held requirement of there being also a physical injury has been abated. Agis v. Howard Johnson Co., 371 Mass. 140, 142-45 (1976). However, the “extreme and outrageous conduct” requirement of the tort has been defined as conduct “so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.” Richey v. American Automobile Association, Inc., 380 Mass. 835, 838 (1980) quoting Restatement (Second) of Torts, §46, Comment d (1965). See Boyle v. Wenk, 378 Mass. 592, 594-95 (1979) (evidence of conduct of an extreme and outrageous nature attempting to “intentionally shock and harm a person’s ‘peace of mind’ by invading the person’s mental or emotional tranquility” were sufficient to support plaintiffs verdict).
Here I find that the conduct of Sherwood in lending plaintiffs $280,000 in a mortgage loan transaction was not extreme in degree and/or outrageous of character as required by law. See, Mello v. Stop & Shop Companies, 402 Mass. 555, 562 (1988); Foley v. Polaroid Corp., 400 Mass. 82, 99-100 (1987); Conway v. Smerling, 37 Mass.App.Ct. 1, 8 (1994). Additionally no evidence established an intention of Sherwood to harm plaintiffs or reckless disregard by Sherwood for any foreseeable harmful effects of its conduct.
Assuming, that Sherwood made this mortgage loan to plaintiffs when unsupporting loan to value and debt to income ratios should have cautioned a prudent lender against making it, a fact that I do not find, such conduct would not arise to the level required. “Outrageous” conduct requires “a high order of reckless, ruthlessness or deliberate malevolence that ... is simply intolerable.” Conway v. Smerling, 37 Mass.App.Ct. at 8. It consists of conduct “beyond all possible bounds of decency and . .. regarded as atrocious . . .” Richey v. American Automobile Association, Inc., 38 Mass. at 838. The facts as established at trial do not support a finding of “outrageous” conduct of defendant, Sherwood against plaintiffs.
Upon the facts produced at trial, I do not find that Sherwood intentionally or recklessly inflicted emotional distress upon plaintiffs.
ORDER
The court finds for and renders a verdict for the defendant Sherwood Mortgage Group, Inc. Judgment for Sherwood Mortgage Group, Inc. shall enter and it is awarded statutory costs.

The only defendant in this action is Sherwood Mortgage Group, Inc. Claims against A.M.R. Realty, LLC, Amit Mathur, Ramon B. Frias, and Gina Llerena-Donohue d/b/a Su Casa Real Estate, though originally sued as defendants, are not before the court in this trial. The court finds the plaintiffs’ use of the phraseology “and Its Officers and Directors, Heirs and Insurers” to be surplusage without legal significance. The defendant is referred to herein as Sherwood Mortgage Group, Inc.

Count IX of plaintiffs’ amended complaint alleging Sherwood’s failure to make a reasonable offer of settlement, was dismissed by the court as not setting forth a claim upon which relief could be granted. Insofar as Count IX relates to claims under G.L.c. 93A, this is dealt with in Count II.

The day in July of the execution of the Purchase and Sale Agreement was not set forth in the opening sentence of the Agreement or above the signatures of the Seller and Buyers at the conclusion of the Agreement.