Kaplan, Mitchell H., J.
INTRODUCTION
This action was filed in response to defendant Provident Funding Assoc. L.P.’s (Provident) efforts to evict plaintiff Nancy Henry, from a single-family residence located at 24 Upton Street in Cambridge (the Property) — a residence which she previously owned and in which she has lived for many years. It is before the court on Provident’s motion to dismiss the complaint under Mass.R.Civ.P. 12(b)(6) for failure to state a claim against it on which relief may be granted. Assuming the truth of the allegations set out in Ms. Henry’s Second Amended Complaint (the Complaint), as the court must when addressing a motion to dismiss, the Complaint relates a sad and compelling story *34 in which defendant Dennis Dunphy took advantage of an elderly woman who was cognitively impaired for personal financial gain, with disastrous consequences. It also describes the unintended but damaging consequences that all too frequently resulted from the institutional lending industry’s voracious appetite for mortgage loans that lenders were willing to write with little or no investigation into the undocumented representations in the loan applications. Nonetheless, neither the unfortunate circumstances alleged in the Complaint, nor the court’s sympathy for the plaintiff, relieve Ms. Henry from the obligation to allege a claim against Provident on which relief can be granted.
BACKGROUND
The following facts are alleged in the Complaint. Allegations that do not involve Provident are addressed only in sufficient detail to place those concerning Provident in context.
Ms. Henry is in her 70s and suffers from Alzheimer’s disease. She has lived in the Property all her life; during the period at issue in this action, her son resided there as well. In 1995, the Property was damaged by fire, and Ms. Henry obtained a mortgage loan in the amount of $105,000 from a community organization to repair it. This organization did not charge interest on that loan. In 2005, Ms. Henry obtained a second mortgage loan in the amount of $75,000 from an entity called Option One to do further repairs. By December 2006, Ms. Henry was already in arrears on the Option One loan, and foreclosure proceedings were underway.
At that point, Ms. Henry was introduced to Mr. Dunphy, a real estate broker. Mr. Dunphy told Ms. Henry that he could help her acquire less expensive housing that was more appropriate for her. In February 2007, Ms. Henry sold the Property to him, as the trustee of the 24 Upton Street Trust (the Trust) for $228,000. The proceeds of the sale were used to pay off the two existing mortgage loans. Ms. Henry received some cash from Mr. Dunphy; however, he also retained $34,000 that he said he would keep for Ms. Henry, but has never given her. Mr. Dunphy also did not find an alternative residence for Ms. Henry.
Five months later, in August 2007, the Trust sold the Property to Melody Santos, a single mother living in subsidized housing in Boston, for $580,000. This sale was financed by Provident, which gave Ms. Santos a $417,000 first mortgage loan to purchase the Property, and an additional $100,000 loan secured by a second mortgage. Defendants Scott Moore and People’s Choice Mortgage assisted Ms. Santos in obtaining these mortgage loans. The application that Ms. Santos submitted to Provident falsely stated that she was employed at a job that paid $9,000 a month, had $80,000 in a bank account, and had $58,000 on deposit with a real estate broker as a down payment toward the purchase price. In fact, Ms. Santos was unemployed, had no assets, and had made no deposit. Moreover, she had recently borrowed $294,300 to purchase another home in Boston. Had Provident performed any investigation of Ms. Santos before lending her the $517,000, it would have learned some or all of this information.
The Santos loan was soon in default and Provident foreclosed on the Property on July 7, 2008. At the time the foreclosure was initiated, the mortgage on the Property was still held by Mortgage Electronic Registration Systems (MERS) and had not yet been assigned to Provident. The Federal Home Loan Mortgage Corporation (Freddie Mac) acquired the Property through the foreclosure, as assignee of Provident’s bid at auction. On July 21, 2008, Freddie Mac served a Notice to Quit on Ms. Henry and her son and began summary process proceedings. Ms. Henry did not appear in the summary process action and a default judgment for possession entered in favor of Freddie Mac. It was only then that Ms. Henry learned of the foreclosure and the action to evict her and her son. At that point, her son was able to obtain a stay of the eviction.[2]
DISCUSSION
The Complaint asserts four causes of action against Provident: negligent underwriting (Count I); fraudulent conveyance and rescission (Count III); negligent eviction (Count IV); and a violation of G.L.c. 93A, §9 (Count IX).[3]
A. Counts III and IV
Provident’s motion to dismiss Counts III and IV requires little analysis. A fraudulent conveyance or transfer is a transfer that may be set aside by a creditor of the transferor under certain circumstances to recover the debt owed it. See, e.g., Eliot Discount Corp. v. Dame, 19 Mass.App.Ct. 280, 282 (1985). This cause of action simply has no application to the facts alleged in this case. “Negligent eviction” is not a cause of action known to or understood by this court. The Complaint alleges that Provident petitioned a court to issue an execution for possession of the property. If the pleadings filed to obtain that relief were without any basis in fact or law, or not advanced in good faith, relief might be sought against the attorney who filed them under Mass.R.Civ.P. 11(a) or, perhaps, against the plaintiff under G.L.c. 231, §6F. However, there is no claim for negligently petitioning a court to grant relief. Indeed, a claim based exclusively on a party’s petitioning a court for relief would be subject to dismissal under G.L.c. 231, §59H. See Keystone Freight Corp. v. Bartlett Consolidated, Inc., 77 Mass.App.Ct. 304, 314 (2010).
B. Negligent Underwriting — Count I
Ms. Henry’s claim for “negligent underwriting” requires more analysis. The Complaint alleges that Provident’s loan to Santos was made without any documentation to support Santos’ stated income and stated assets — sometimes referred to as a “SISA” loan and if any meaningful investigation of Santos had been *35 undertaken, Provident would have known that the loan application was fraudulent and the credit would not have been extended.[4]
As a starting point, the court notes that Ms. Hemy has not directed the court to any case that has found that a cause of action for negligent underwriting exists. In a recent decision, the First Circuit Court of Appeals commented that no Massachusetts court has recognized such a cause of action and held that: “if common law negligence is to be expanded in Massachusetts [to cover the underwriting of loans], it should be done by the state courts.” Frappier v. Countrywide Home Loans, Inc., 645 F.3d 51, 59 (1st Cir. 2011). Additionally, in an opinion written by then Superior Court judge, now Supreme Judicial Court Justice Gants, Commonwealth v. Fremont Invest. & Loan (Ma.Super. Feb. 26, 2008) [23 Mass. L. Rptr. 567], Justice Gants expressly declined even to include the fact that stated income on a loan application was undocumented as a characteristic “to be used to determine whether a loan is presumptively unfair”:
‘[S]tated income’ loans are no more prone to foreclosure than full documentation loans if the statements in the application are accurate; they become more prone to foreclosure only if the applicant (or the broker with the acquiescence or ignorance of the applicant) falsely inflates his income or assets. While such loans may not be prudent for a bank to issue because they fail to protect the bank from the risk of fraud, they cannot be said to be unfair to the borrower for this reason.
While Justice Gants was not specifically addressing the question of whether a common-law claim for negligent underwriting can be stated in this passage from Fremont, his comment does not suggest that he would support the creation of such a new cause of action.[5]
Under Massachusetts law, the starting point for a claim of negligence is a duty owed by the defendant to the plaintiff. Ms. Hemy cites a number of cases in which the Supreme Judicial Court addressed the question of when a defendant owed the plaintiff a duly to prevent a third person from causing serious physical injuiy to the plaintiff. See, e.g., Jupin v. Kask, 447 Mass. 141, 146-47 (2006) (duty to secure a handgun used by a third party to shoot plaintiffs son), and Commerce Ins. Co. v. Ultimate Livery Service, Inc., 452 Mass. 639, 649-50 (duty of a private carrier to prevent intoxicated passenger from driving when he was dropped off near his car). The court does not find these cases to be apposite. The policy considerations discussed in those opinions address societal concerns for conduct that was generally understood to present “egregious violations of public safety” that endangered others. Id. at 651. Moreover, the SJC has frequently reaffirmed the rule “that purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage.” FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395 (1993). In this case, the duty that Ms. Hemy would impose on Provident would be a common-law duty to investigate eveiy loan application, not only to protect the loan applicant, but other potential plaintiffs in the chain of title who may have been duped into selling their homes to a miscreant. The loss that these potential plaintiffs might suffer would be entirely economic. The court does not think that the new duiy that Ms. Hemy asks the court to establish represents a reasonable extension of a previously recognized common-law duly.
Moreover, this is not a case in which Ms. Henry can point to any special relationship between her and Provident that might give rise to a duty particular to her. See Broomfield v. Kosow, 349 Mass. 749, 755 (1965) (examining when such a duty might arise in the context of a business relationship). Indeed, Ms. Henry had no contact with Provident.
Finally, Ms. Henry argues that New York courts have recognized a claim for negligent underwriting, and cites Thomas v. Lasalle Bank Nat. Ass’n, 913, N.Y.S.2d 742 (App.Div. 2nd Dept. 2010), in support of her position. This Appellate Division decision, however, expressly states: “the complaint does not state a cause of action against the appellants sounding in negligence. Under the circumstances alleged here, a mortgagee does not owe a duty to the seller of real estate, in effect, to prevent a fraudulent conveyance.” Id. at 745.
For these reasons, Count I fails to state a claim on which relief can be granted.
D. Chapter 93A — Count IX
The court’s determination that Provident’s alleged conduct does not constitute a common-law tort does not mean that it may not constitute a violation of G.L.c. 93A, §2. “General Laws c. 93A, §2(a), makes unlawful any unfair or deceptive acts or practices in the conduct of any trade or commerce. Chapter 93A creates new substantive rights and, in particular cases, makes conduct unlawful which was not unlawful under the common law or any prior statute. The statute does not define unfairness, recognizing that there is no limit to human inventiveness in this field ... It is well established that a practice may be deemed unfair if it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness.” Commonwealth v. Fremont Invesment & Loan, 452 Mass. 733, 742 (2008) (internal quotations and citations omitted). In the present case, Ms. Hemy has not demonstrated that a failure to investigate a SISA loan in August 2007 then fell within the penumbra of some statutory, regulatory or other established concept of unfairness. The Santos loan is not alleged to have any of the characteristics of the subprime loans found potentially to violate Chapter 93A in Fremont. It was not an adjustable rate loan; and, the loan application, if believed, reflected a ten percent down payment for the Property and that the borrower had adequate income to service the loan. While five years later, the *36 foolhardiness of Provident’s alleged failure to do any meaningful investigation of the undocumented assertions in the application is evident, that does not make the failure to investigate unfair or deceptive. There is an important distinction between conduct that is “unfair or deceptive” and simply foolish. Indeed, the failure to investigate enabled Provident’s co-defendants allegedly to deceive Provident, with the result that even if its foreclosure of the Property is not rescinded and the plaintiff evicted, it will undoubtedly suffer economic loss itself.[6]
For these reasons, the court concludes that, in this case, a failure to investigate the statements in the Santos loan application did not violate G.L.c. 93A, §2.[7]
E. Is Provident a Bona Fide Purchaser for Value?
For the foregoing reasons, the court concludes that the Complaint does not state a claim against Provident on which relief can be granted. However, as noted above, see footnote 2, supra, there is another case pending between Ms. Henry and Provident that has been transferred to this session of the Superior Court: the summary process action in which Provident seeks to evict Ms. Henry and her son from the Properiy. The court notes that in Thomas v. Lasalle, supra, the New York Appellate Division, while finding that the plaintiffs had no cause of action for the mortgagee’s alleged negligent failure to investigate the borrower’s representations, did hold that the plaintiff had stated a claim for rescission of the mortgage on a theory that the mortgagee was not a bona fide encumbrancer for value: “A mortgagee’s interest in the property is protected unless it has notice of a previous fraud affecting the title of its grantor. A mortgagee is under a duty to make an inquiry where it is aware of facts that would lead a reasonable, prudent lender to make inquiries of the circumstances of the transaction at issue. A mortgagee who fails to make such an inquiry is not a bona fide encumbrance for value.” Thomas, 913 N.Y.S.2d at 744 (internal quotations and citations omitted). A cursory review of the law of other states suggests that California courts have also considered this theory and held that a mortgagee with constructive notice that title to a property was obtained by fraud might not be a bona fide encumbrancer for value, and (w)hether an encumbrancer had sufficient information to prompt a reasonable person to make a further investigation and, thus, whether notice is to be implied, is a question of fact." Johnson v. Deutsche Bank National Trust Co., B223188 (Cal.App. August 23, 2011) (unpublished opinion).
In this case, Ms. Henry does allege that she was elderly and cognitively impaired and Dunphy fraudulently induced her to sell the Property to the Trust. She also very generally alleges facts that might, potentially, put a mortgagee on constructive notice that mischief was afoot. For example, the Trust was selling the Property to Santos five months after it purchased it for two and one-half times the prior sale price. Santos also claimed to have a six figure annual income, but lived in subsidized housing. The questions: are these alleged facts sufficient to place Provident on constructive notice that the Trust acquired title to the Property through fraud; and would the theory that a mortgagee’s rights to foreclose might be affected if it were not a bona fide encumbrancer for value be recognized under Massachusetts law, are beyond the scope of this opinion.
ORDER
For the foregoing reasons, Provident’s motion to dismiss the claims asserted against it in the Complaint is ALLOWED.

 The account of the events affecting title and possession of the Property set out in the Complaint ends at this point. At oral argument the parties informed the court that thereafter Freddie Mac was able to force Provident to reacquire the Property from it, the foreclosure was redone after MERS assigned the mortgage to Provident, the default in the summary process action was vacated, and the Provident filed a summary process action in its own name. That summary process action was transferred to this court where it is still pending.

 Count V is entitled “Civil Conspiracy (As to All Defendants)”; however, there is nothing in the text of that count that refers to Provident and, at oral argument, Ms. Henry’s counsel confirmed that no claims were asserted against Provident in Count V.

 That would however have left in place the mortgage loan that enabled the Trust to purchase the Property from Ms. Henry and there are no allegations that the underwriting on that loan was negligent.

 Ms. Henry’s contention that regulations were in effect at the time the Santos loan issued that prohibited Provident from approving this SISA loan without conducting an investigation is not correct. It may be noted that this was not a nontraditional loan. Rather, according to Santos’ application, this was a loan bearing interest at a fixed rate with a thirty-year term, and Santos was making a down payment of 10% of the purchase price. Her “stated income” is not alleged to be inadequate to meet her principal and interest obligations.

 Ms. Henry alleges on information and belief that the appraisal submitted with the loan application “was inflated to justify the purported sale price of $580,000.”

 The court does not address the requirement that the conduct that is alleged to be unfair or deceptive must also have caused Ms. Henry injury and that injury “was foreseeable as a result of the deception.” Lord v. Commercial Union Ins. Co., 60 Mass.App.Ct. 309, 317 (2004). It is, however, not clear that Provident’s conduct caused Ms. Henry’s injury or that the nature of her injury was a foreseeable consequence of Provident’s failure to investigate Santos’ loan application. While the Complaint is less than clear on this point, it certainly suggests that Dunphy financed the purchase of the Property from Ms. Henry. Ms. Henry no longer owned the home after that purchase, and it was subject to a mortgage loan, albeit a smaller loan before the transfer to Santos. There is no allegation that Dunphy had any preexisting relationship with Provident or that Provident was in some way a participant in Dunphy’s acquiring the Property from Ms. Henry. There is no allegation that whatever institution loaned money to Dunphy had engaged in an unfair or deceptive act, or should have known that Dunphy was defrauding Ms. Henry.