Cosgrove, Robert C., J.
The plaintiff, Provident Funding Associates, LP, commenced this summary process action seeking to evict defendants Nancy J. Henry, Carl Jones, Robert Jones, and others from 24 Upton Street, Cambridge, Massachusetts (the “Property”). The defendants filed a summary process answer including the following counterclaims and affirmative defenses: negligent infliction of emotional distress (Counterclaim I), violation of G.L.c. 93A (Counterclaim II), no superior right to possession (Affirmative Defense I), equity (Affirmative Defense II), relief from forfeiture (Affirmative Defense III), equitable estoppel and/or waiver (Affirmative Defense IV), and lack of standing (Affirmative Defense V).
*38 Judge Kaplan, who issued a related decision pertaining to these parties which will be discussed below, poignantly characterized the nature of this case:
[The defendants] relate[ ] a sad and compelling story in which . . . Dennis Dunphy took advantage of an elderly woman who was cognitively impaired for personal financial gain, with disastrous consequences. [They] also describe! ] the unintended but damaging consequences that all too frequently resulted from the institutional lending industry’s voracious appetite for mortgage loans that lenders were willing to write with little or no investigation into the undocumented representations in the loan applications. Nonetheless, neither the unfortunate circumstances alleged in [the defendants’ summary process answer], nor the court’s sympathy for the [defendants], relieve [the defendants] from the obligation to allege a claim against Provident on which relief can be granted.
Henry v. Provident Funding Assoc., L.P., SUCV2011-1332, slip op. at 8 (Mass.Super. Mar. 16, 2012) (Kaplan, J.) [30 Mass. L. Rptr. 33].
This matter is now before the court on Provident’s Motion to Strike and Dismiss Defendants’ Counterclaims I and II and Affirmative Defenses I, II, III, IV, and V. For the following reasons, the plaintiffs motion is allowed.
Background
Accepting as true the factual allegations of the defendants’ answer and the inferences therefrom, see Harvard Crimson, Inc. v. President & Fellows of Harvard Coll., 445 Mass. 745, 749 (2006), the material facts are as follows. In February 2007, Ms. Henry, an elderly woman with cognitive impairments due to Alzheimer’s disease, sold and deeded the Property to Dennis Dunphy to avoid foreclosure. Mr. Dunphy achieved this transaction by falsely representing to Ms. Henry that he would help her find a new home. In August 2007, for about twice the purchase price, Mr. Dunphy sold the Property by a quitclaim deed to Melody Santos, an individual unrelated to Ms. Henry or the other defendants.[2] Ms. Santos encumbered the Property by granting a mortgage in favor of Provident.[3] In tire mortgage application Ms. Santos submitted to Provident, she falsely stated that she had $80,000 in a bank account and held a job for which she received $9,000 per month. Ms. Santos’s address on the mortgage application indicated that she lived in subsidized housing. Ms. Santos also failed to disclose that in June 2007 she encumbered a properly in South Boston with a $300,000 mortgage in favor of Countrywide Home Loans.
Sometime later, Provident sold the Santos mortgage to Freddie Mac. In August 2008, Freddie Mac notified Provident that it was exercising its contractual right to require the repurchase of the Santos mortgage because Freddie Mac determined that Ms. Santos misrepresented her monthly obligations and income on the loan application. In accordance with Freddie Mac’s request, Provident repurchased the Santos mortgage.
In June 2010, Provident filed a Complaint for Summary Process (the “Summary Process Action”) to evict the defendants from the Property.[4] In January 2011, Judge Singleton stayed the Summary Process Action pending adjudication of a complaint brought by the defendants against Provident and others in the Superior Court [“Henry I”). Ms. Henry’s complaint in Henry I asserted that Provident engaged in negligent underwriting, fraudulent conveyance and rescission, negligent eviction, and violation of G.L.c. 93A, §9. Provident filed a motion to dismiss, and in a decision dated March 16, 2012 Judge Kaplan allowed Provident’s motion [30 Mass. L. Rptr. 33]. Now, as the Summary Process Action continues, the defendants have answered with numerous counterclaims and affirmative defenses.
Discussion
I. Standard of Review Motion to Dismiss
Pursuant to Mass.R.Civ.P. 12(b)(6), the court will dismiss counterclaims or affirmative defenses if they fail to state claims upon which relief can be granted. While a pleading “attacked by a . . . motion to dismiss does not need detailed factual allegations,” anon-moving party’s obligation is “to provide the ‘grounds’ of his ‘entitle[ment] to relief.’ ” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original). This “requires more than labels and conclusions . . . Factual allegations must be enough to raise a right to relief above the speculative level. . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . .” Iannacchino, 451 Mass, at 636, quoting Bell Atl. Corp., 550 U.S. at 555 (alteration in original).
A court may allow a motion to dismiss under Mass.R.Civ.P. 12(b)(9) based on the “pendency of a prior action in a court of the Commonwealth.” This rule codifies collateral estoppel and claim preclusion and prohibits the practice of claim splitting. M.J. Flaherty Co. v. U.S. Fid. & Guar. Co., 61 Mass.App.Ct. 337, 339 (2004); Keen v. W. New Eng. Coll, 23 Mass.App.Ct. 84, 87 (1986).
Motion to Strike
A motion to strike is the counterpart to Rule 12(b)(6) and permits the court to strike “any insufficient defense” alleged by one of the parties. Mass.R.Civ.P. 12(f); Deutsche Bank Nat’l Trust Co. v. Gabriel, 81 Mass.App.Ct. 564, 571 (2012). A motion to strike challenges the legal sufficiency of affirmative defenses and is governed by the same standards as a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6). Deutsche Bank, 81 Mass.App.Ct. at 571 (citations and internal quotation marks omitted). To prevail on a motion to strike, the moving party must establish that the op *39 posing party cannot prove the legal matters asserted in the affirmative defense, meaning, the proposed affirmative defense would fail as a matter of law. Petro Grp., Inc. v. Eskanian, 2008 Mass.App.Div. 95, *6 (2008). Like a motion to dismiss, a motion to strike is intended to screen out issues that do not warrant a trial. See O’Rourke v. Hunter, 446 Mass. 814, 820 (2006).
II. Counterclaims I & II
Provident argues that the defendants’ counterclaims are barred by res judicata because the defendants already had their opportunity to bring claims against Provident in Henry I[5] The defendants argue that the counterclaims were not litigated in Henry I and therefore are not subject to dismissal.
Res judicata “makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action.” Jarosz v. Palmer, 436 Mass. 526, 531 n.3 (2002) (citations omitted). Res judicata embodies both collateral estoppel and claim preclusion and applies if (1) the party against whom estoppel is asserted was a party (or in privity with a party) in the prior adjudication; (2) the issue or cause of action in the prior adjudication is identical to that in the current adjudication; and (3) there was a final judgment on the merits in the prior adjudication. TLT Constr. Corp. v. A. Anthony Tappe andAssocs., Inc., 48 Mass.App.Ct. 1, 5 (1999) (citations omitted).
Collateral estoppel, or issue preclusion, prevents a parly from relitigating an issue which has already been litigated or which could have been litigated. See Restatement (Second) of Judgments §27 cmt. b (1982). Collateral estoppel is premised “on the idea that the party to be precluded has had the incentive and opportunity to litigate the matter fully in the first lawsuit.” O’Neill v. City Manager, 428 Mass. 257, 259 (1998), quoting Heacock v. Heacock, 402 Mass. 21, 24 (1988). Claim preclusion “prohibits the maintenance of an action based on the same claim that was the subject of an earlier action between the same parties or their privies.” Heacock, 402 Mass, at 24 n.2. While the other defendants in this action were not parties to Henry I, they were in privity with Ms. Henry because as residents of the Property they could have brought claims against Provident arising out of the subject matter of Henry I. See In re Weiss, 460 Mass. 1012, 1013 (2011) (explaining that parties are in privity when they could have joined the previous action because they had standing in that proceeding); Black’s Law Dictionary 1217 (7th ed. 1999) (Privity is “[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter”). Thus, as this court treats Judge Kaplan’s decision as a final judgment On the merits,[6] the only remaining question is whether the issues and causes of actions in Henry I are sufficiently identical to those brought by the defendants in this case.
Counterclaim I
Counterclaim I (negligent infliction of emotional distress) is precluded by collateral estoppel. Ms. Henry filed Henry I in response to Provident’s efforts to evict the defendants from the Property. In Henry I, the defendants had the opportunity to assert any cause of action against Provident in Superior Court, including negligent infliction of emotional distress. Judge Singleton stayed the Summary Process Action for this very reason, to allow the defendants to bring an action against Provident and others as a result of their misfortune. When Judge Singleton did so, Henry I became the defendants’ forum to bring any and all actions against Provident in relation to this misfortune. To allow the defendants to bring this claim now, when they already had such an opportunity, is inconsistent with the policy behind res judicata. Bui v. Ma, 62 Mass.App.Ct. 553, 563 (2004) (precluding all claims regarding the validity of a lease from being raised in a second action because the plaintiff had the “opportunity, ability, and incentive” to raise these same claims in the first action). Accordingly, Counterclaim I must be dismissed. Mass.R.Civ.P. 12(b)(9); see Day v. Kerkorian, 61 Mass.App.Ct. 804, 811 (2004) (explaining that res judicata and Mass.R.Civ.P. 12(b)(9) arise from the presumption that if “a claimant has had an opportunity to assert his claims against a given [party], and either has failed to assert those claims, or has asserted the claims and had them adjudicated adversely” then the claimant should not be entitled to relitigate such claims).
Counterclaim II
Likewise, Counterclaim II (G.L.c. 93A) is barred by claim preclusion. The 93A claim in the Henry I complaint recites almost verbatim the reasons in support of the 93A counterclaim here. As Judge Kaplan stated in his decision, “Ms. Hemy has not demonstrated that a failure to investigate a SISA loan in August 2007 then fell within the penumbra of some statutory, regulatory or other established concept of unfairness . . . For these reasons, the court concludes that, in this case, a failure to investigate the statements in the Santos loan application did not violate G.L.c. 93A, §2.” Henry, SUCV2011-1332, slip op. at 8. Accordingly, Counterclaim II is dismissed. Mass.R.Civ.P. 12(b)(9).
III. Affirmative Defenses II, III, IV & V Affirmative Defenses II and III
Affirmative Defenses II and III are legally insufficient and must be stricken. Mass.R.Civ.P. 12(f). With regard to Affirmative Defense II (equity), the defendants argue that it is “against the principles of equity” to allow Provident to evict the defendants and that the court should invalidate the foreclosure proceedings on these grounds. Similarly, in Affirmative Defense III (relief from forfeiture), the defendants request that the court “exercise its jurisdiction accordingly upon such conditions it deems just and equitable” to grant the defendants relief. Provident argues that the defen *40 dants have overlooked the role of the court in a summary process action and therefore, an affirmative defense calling upon the court to invoke its equitable jurisdiction must be stricken.
The Superior Court has jurisdiction over all actions cognizable under the general principles of equity jurisprudence. G.L.c. 214, §1; Beaton v. Land Court, 367 Mass. 385, 392 (1975) (“[A] court acting under general principles of equity jurisprudence has broad power to reform, rescind, or cancel written instruments, including mortgages, on grounds such as fraud, mistake, accident, or illegality”). A court presiding over a summary process action may consider a claim or defense alleging an invalid foreclosure sale. See Eaton v. Fed. Nat’l Mortg. Ass’n, 462 Mass. 569, 574 n.9 (2012), citing Bank ofN.Y. v. Bailey, 460 Mass. 327, 333-34 (2011). A defendant in a summary process action “shall . . . state in the answer any affirmative defenses which may be asserted.” Uniform Summary Process R. 3. However, a defendant in a summary process proceeding may only assert affirmative defenses that relate to the validity of legal title. Golfeo Acquisitions, Inc. v. Golftown, Inc., 2004 Mass.App.Div. 141, 143 (2004) (“While equitable affirmative defenses are allowed in a summary process action, they must challenge the validity of legal title”).
Here, the defendants’ Affirmative Defenses II and III do not sufficiently relate to the validity of legal title itself. Instead, these defenses are more akin to remedies, which would be implemented after a finding that Provident does not validly hold legal title. See infra Part IV. Because they are not viable claims, Affirmative Defenses II and III must be stricken. Mass.R.Civ.P. 12(f); see also Harvard Crimson, Inc., 445 Mass, at 748 (explaining that the purpose of a motion to dismiss is to “permit [the] prompt resolution of a case where the allegations in the complaint clearly demonstrate that the plaintiffs claim is legally insufficient”).
Affirmative Defense IV
Affirmative Defense IV (equitable estoppel and/or waiver) must also be stricken because, as Provident correctly argues, the defendants have failed to sufficiently allege the elements necessary to establish equitable estoppel. The defendants solely state that “(t]he plaintiffs claims are barred under the equitable doctrines of estoppel and/or waiver” and provide nothing to further support their defense, whether it be facts or law, in support of their position. Therefore, Affirmative Defense IV is stricken. Mass.R.Civ.P. 12(f); see also Iannacchino, 451 Mass, at 636 (requiring the non-moving parly to provide “more than labels and conclusions” to overcome a motion to dismiss).
Affirmative Defense V
The defendants argue in Affirmative Defense V (lack of standing) that because Provident engaged in a wrongful foreclosure of the premises they lack standing to pursue the present action. This defense is duplicative of Affirmative Defense I, because in substance it challenges Provident’s right to possession of the Properly, and will be considered on its merits in Part IV infra. Therefore, Affirmative Defense V is stricken. Mass.R.Civ.P. 12(f) (“[T]he court may after hearing order stricken from any pleading any . . . redundant. . . matter”).
IV. Affirmative Defense I
Affirmative Defense I (no superior right to possession) is essentially a claim that Provident was not a bona fide purchaser of the Property. Provident provides three arguments in support of its motion to strike this affirmative defense: (1) res judicata bars the defendants’ argument; (2) the defendants do not have standing to allege this defense; and (3) the defendants’ defense fails on the merits. Each of these arguments will be addressed in turn.
Res Judicata
Res judicata does not bar the defendants’ bona fide purchaser defense because Judge Kaplan expressly left open the question of whether Provident was a bona fide purchaser for value: “In this case, Ms. Heniy does allege that she was elderly and cognitively impaired and Mr. Dunphy fraudulently induced her to sell the Property . . . She also generally alleges facts that might, potentially, put a mortgagee on constructive notice that mischief was afoot. . .” Henry, SUCV2011-1332, slip op. at 10. Judge Kaplan noted that this issue was beyond the scope of his opinion and declined to make a ruling. Id.
Standing
Standing requires “a definite interest in the matters in contention,” meaning, the plaintiffs rights will be significantly affected by the resolution of the contested point. Bonan v. Boston, 398 Mass. 315, 320 (1986). Here, the defendants allege that Provident was on notice that Ms. Santos was ineligible for the loan, and Provident, therefore, is obtaining title and possession of the Property through unlawful eviction and foreclosure. As such, the defendants can establish legally cognizable injuries that the eviction proceedings have caused—wrongful eviction and foreclosure. See Slama v. Attorney General, 384 Mass. 620, 624 (1981). This is enough to survive a motion to strike. Mass. Rule Civ. P. 12(f).
Merits
A bona fide purchaser is one who, in good faith, buys something for valuable consideration without actual or constructive notice of any defects in, or infirmities, claims, or equities against the seller’s title. Brown v. Accredited Home Lenders, Inc., 26 Mass. L. Rptr. 559 (Mass.Super.Ct. 2009); see also Denn v. Miller, 18 LCR278, 280 (2010). “A subsequent grantee without notice can be a bona fide purchaser, entitling him to ‘rely with certainty upon the fact that no instrument which does not appear of record and of which he does not have actual notice’ will spoil his claim of ownership.” Denn, 18 LCR at 281, quoting *41 Fangerv. Feeder, 327 Mass. 501, 506 (1951). “Notice” comes in two forms: actual and constructive. See Gallivan v. Zoning Bd. of Appeals of Wellesley, 71 Mass.App.Ct. 850, 857 (2008). A party claiming that another is not a bona ñde purchaser bears the burden of proof. Selectmen of Hanson v. Lindsay, 444 Mass. 502, 509-10 (2005).
Even where a chain of title is clouded, a bona fide purchaser may rightfully take title to the exclusion of former title holders. In Massachusetts, the transfer of a quitclaim deed is “voidable, and not void, if fraudulent as to creditors; and until defeated by a creditor, the title of the grantor passes.” Bevilacqua v. Rodriguez, 460 Mass. 762, 777 n. 11 (2011), quoting Mansfield v. Dyer, 131 Mass. 200, 201 (1881) (internal quotations omitted). When a transaction is void, "it is a nullity such that title never left possession of the original owner” whereas when a transaction is voidable it is valid until annulled. Id. at 778. Thus, if a grantor has voidable title to a property, the “title may pass through a quitclaim deed to a bona fide purchaser in whose hands the title is no longer voidable.” Id. at 777 n.ll.
In this case, Provident’s motion to strike is granted because the defendants have not sufficiently alleged that Provident is not a bona fide purchaser. As an initial matter, the defendants argue in their pleadings that it is Provident’s duty to establish it is a bona ñde purchaser. This is an inaccurate statement of the law. Selectmen of Hanson, 444 Mass, at 509-10. The defendants also argue, with minimal factual support, that Provident had actual or constructive notice that Ms. Santos was ineligible for the mortgage because there was ample forewarning that she had misrepresented her financial status on the loan application. The sole factual support the defendants cite for the proposition that Provident is not a bona fide purchaser is the letter Freddie Mac sent to Provident requesting that Provident repurchase the loan.[7] This letter, the defendants continue, establishes that Provident knew or should have known that it was underwriting a mortgage that was part of the fraudulent transfer of the Properly.
Despite the defendants’ argument, Ms. Santos bought the property and obtained the mortgage from Provident in August 2007, but Freddie Mac sent the letter to Provident in August 2008. Therefore, the Freddie Mac letter did not put Provident on any kind of notice that the Santos loan was fraudulent until after it had lent the money to Ms. Santos. While the Supreme Judicial Court has noted that “parties may not establish themselves as bona fide purchasers simply by claiming they were bñssfully unaware of facts to which they closed their eyes,” actual or constructive notice of defects in title are required to call a party’s bona fide purchaser status into question. Bevilacqua v. Rodriguez, 460 Mass. 762, 779 (2011), citing Demoulas v. Demoulas, 428 Mass. 555, 577 (1998) (internal quotation marks omitted); see Brown v. Carlson, 26 Mass. L. Rptr. 61 (2009) (in a case on simüar facts the court held that the former homeowner did not estabUsh that the lender “had actual or even constructive knowledge of [the former home owner’s] victimization by [a third party] . . . such as to defeat [the lender’s] status as a bona fide mortgagee for value”).
Whüe Mr. Dunphy’s sale of the Property to Ms. Santos for twice his recent purchase price was discoverable with minimal investigation and could put Provident on notice of suspicious circumstances, this fact alone does not impose a duty upon a mortgagee to investigate the legality of the sale. Cf. Patrocinio v. A.M.R. Realty, LLC, 28 Mass. L. Rptr. 211, 213 (Mass.Super. 2011) (“In Massachusetts, the lender-borrower relationship is regarded as being at arms length. Thus, no special duties are imposed on the lender . . .”), citing Shawmut Bank, N.A. v. Way man, 34 Mass.App.Ct. 20, 24 (1993). Compare Johnson v. Deutsche Bank Natl Trust Co., 2011 Cal.App. Unpub. Lexis 6351 (Cal.Ct.App. Aug. 23, 2011) (finding warning signs “sufficient to prompt a reasonable inquiry” by the mortgagee where there was a discrepancy in the chain of title, rapid multiple conveyances and steep appreciation, the original owner remained in continuous possession and the original owner recorded a lis pendens against the property); Thomas v. LaSalle Bank Nat’l Assoc., 913 N.Y.S.2d 742, 744 (N.Y.App.Div. 2010) (recognizing that a “mortgagee is under a duty to make an inquiry where it is aware of facts that would lead a reasonable, prudent lender to make inquiries of the circumstances of the transaction at issue”) (citations and internal quotations omitted). Massachusetts has yet to impose such a duty upon a mortgagee. Therefore, the defendants have failed to establish that Provident was not a bona ñde purchaser.
Even if Provident exercised diligence and discovered, as it almost certainly should have, that Ms. Santos did not have the funds to repay the loan, or that she was in fact a straw as the defendants allege, there is nothing that Provident could have discovered that would cast doubt upon the Henry-Dunphy transaction itself. To all appearances the Hemy-Dunphy transaction was normal; it was one and two times removed from the Dunphy-Santos and Santos-Provident transactions respectively. The defendants point to the now oft-quoted “Brooklyn Bridge” analogy, which observes that “there is nothing magical in the act of recording an instrument with the registry that invests an otherwise meaningless document with legal effect” because, otherwise, a “litigant could go to the registry, record a deed to the Brooklyn Bridge, commence suit, hope that the true owners ignored the suit or . . . could not be readily located and [would thus] be defaulted, and secure ajudgment.” Bevilacqua, 460 Mass, at 770-71, quoting Bevilacqua v. Rodriguez, 18 LCR451, 452 (Mass. Land Ct. 2010).
*42 The existing bridge analogy, however, does not account for a case like this one, where a third party (such as Mr. Dunphy) wrongfully induced the rightful owner of the Brooklyn Bridge to sell the property in a transaction that to an outsider’s perspective appears perfectly valid. Differently put, the deed evincing Ms. Henry’s sale of the property to Mr. Dunphy, though it may have been voidable, is not, like the deed in the quoted analogy, a “meaningless document” without legal effect.
Accordingly, Affirmative Defense I is stricken because it is legally insufficient. Mass.R.Civ.P. 12(f); Petro Grp., Inc., 2008 Mass.App.Div. at *6 (“The dis-positive issue on a motion to strike is whether the proposed affirmative defense! ] would fail as a matter of law”); see also Iannacchino, 451 Mass, at 635-36, quoting Bell Atl. Corp., 550 U.S. at 555 (“Factual allegations must be enough to raise a right to relief above the speculative level. . .”).
Order
The “Plaintiff Provident Funding Associates, LP’s Motion to Strike and to Dismiss Defendant’s Affirmative Defenses and Counterclaims” pursuant to Mass.R.Civ.P. 12(b)(6), 12(b)(9), and 12(f) is allowed.

he defendants did not include the date of the sale of the Property from Mr. Dunphy to Ms. Santos in their opposition; Provident attached the Dunphy-Santos quitclaim deed to its motion. This court’s consideration of the deed does not convert Provident’s motion to dismiss to a motion for summary judgment. See Marram, v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004) (noting that where an opposing party attaches a written instrument to its motion to dismiss, consideration of that document does not convert the motion to one for summary judgment as long as the plaintiff had notice of the document and relied on it in framing his or her pleading).

Ms. Santos originally granted the mortgage in favor of Mortgage Electronic Registration Systems, Inc. (“MERS”) and MERS later assigned the mortgage to Provident.

'fhe Summary Process Action originated in tire Cambridge District Court but was transferred to Suffolk Superior Court in April 2012.

Provident also argues that the Affirmative Defenses are precluded on the basis of res judicata. These defenses will be discussed in Parts III and IV infra.

Although the Defendants have not raised the point, technically res judicata does not apply because Provident has not moved for separate and final judgment in Henry I, and accordingly, Judge Kaplan did not enter final judgment in Provident’s favor. However, because it makes no practical sense to allow a matter to be relitigated in a summary process action which grows out of the same operative facts in which a Superior Court judge has issued a decision; and because this court concurs with the legal reasoning of Judge Kaplan’s decision, it is appropriate to adopt it as the law of the case.

This court’s consideration of the Freddie Mac letter does not convert Provident’s motion to a motion for summary judgment. See note 2, supra.